[No. S070590. Mar. 29, 1999.]

CHARLES R. BONDS, Plaintiff and Appellant, v.
MOHAN ROY, Defendant and Appellant.

**COUNSEL**

Gordon, Edelstein, Krepack, Grant, Felton & Goldstein, Howard D. Krepack and Steven J. Kleifield for Plaintiff and Appellant.

Philip L. Merkel for Defendant and Appellant.

Thelen, Reid & Priest, Curtis A. Cole and Matthew S. Levinson for California Medical Association, California Dental Association and California Healthcare Association as Amici Curiae.

---

**OPINION**

**BROWN, J.**—The issue in this case is whether under Code of Civil Procedure section 2034 (section 2034), which provides for discovery of expert witness information, a trial court may preclude an expert witness from testifying at trial on a subject whose general substance was not previously described in an expert witness declaration. The Courts of Appeal are in conflict on this issue. We conclude the testimony may be precluded and, therefore, affirm the judgment of the Court of Appeal, which reached the same conclusion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed. Plaintiff Charles R. Bonds sued defendant Dr. Mohan Roy for medical malpractice during surgery. Bonds contended Roy had negligently severed a major nerve in his right arm, leaving Bonds with little use of that arm and hand.

The parties exchanged designations of experts, including expert witness declarations. In these declarations, Roy's trial counsel designated Dr. Robert Shuman, a cardiovascular thoracic surgeon, Dr. Jan Duncan, an orthopedic surgeon, and Roy as defense experts. The declarations described Shuman's

expected testimony as going to liability, causation, and damages and Duncan's expected testimony as going to damages.

At his deposition, Duncan testified he had been retained for "basically, two things. One, is to evaluate the disability of Mr. Bonds at the time I saw him. And the other was to evaluate how much disability he was [having] prior to the surgery, based on the records." Duncan specifically confirmed he did not expect "to be giving any testimony or any opinion concerning the standard of care issues that might be involved in this case."

At trial, during the afternoon recess of the last day of testimony, Roy's trial counsel sought to expand the scope of Duncan's testimony to include two new areas, which his appellate counsel characterizes as relating to "the standard of care." These were whether Bonds's injury was consistent with a cut nerve or merely a stretched nerve, and the standard of care as to immediate reoperation and consultation with a neurologist. The trial court declined the request, stating Duncan had been expected to testify only as to damages and noting that because he was the last defense witness, there was not enough time to adjourn and take his deposition. The trial court stated any expansion of the scope of Duncan's testimony at that point would be unfair, prejudicial, and a surprise to Bonds. Duncan, who was also a qualified medical evaluator, testified solely on the issue of Bonds's state of disability at the time Duncan examined him, and what vocational opportunities were available to Bonds. The jury returned a verdict in Bonds's favor.

The Court of Appeal affirmed, while reversing an order striking Bonds's memorandum of costs and remanding for a hearing on that issue. In particular, the court held that the trial court had properly limited Duncan's testimony to the area described in the expert witness declaration. The court expressly disagreed with *Castaneda* v. *Bornstein* (1995) 36 Cal.App.4th 1818, 1828-1830 [43 Cal.Rptr.2d 10] (*Castaneda*) and *Martinez* v. *City of Poway* (1993) 12 Cal.App.4th 425, 429-430, 432 [15 Cal.Rptr.2d 644] (*Martinez*), which held that a trial court lacks the power to do so. Roy's petition for rehearing was denied.

We granted Roy's petition for review, limited to the issue set forth above.

## II. STATUTORY FRAMEWORK

Under section 2034, subdivision (a),[1] any party may demand the exchange of expert witness information. In this exchange, a party may provide either

---

[1] All references to subdivisions are to subdivisions of section 2034 unless otherwise indicated.

"[a] list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial" or "[a] statement that the party does not presently intend to offer the testimony of any expert witness." (Subd. (f)(1)(A), (B).) For certain expert witnesses, including the expert at issue in this case, "the exchange shall also include or be accompanied by an expert witness declaration signed only by the attorney for the party designating the expert, or by that party if that party has no attorney." (Subd. (f)(2).)[2] This declaration must be under penalty of perjury and must contain the following: "(A) A brief narrative statement of the qualifications of each expert. [¶] (B) *A brief narrative statement of the general substance of the testimony that the expert is expected to give.* [¶] (C) A representation that the expert has agreed to testify at the trial. [¶] (D) A representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial. [¶] (E) A statement of the expert's hourly and daily fee for providing deposition testimony and for consulting with the retaining attorney." (Subd. (f)(2)(A)-(E), italics added.)

Subdivision (j), the subdivision at issue in this case, provides, "Except as provided in subdivision[] (k), . . . on objection of any party who has made a complete and timely compliance with subdivision (f), the trial court *shall exclude from evidence* the expert opinion of any witness that is offered by any party who has *unreasonably* failed to do any of the following: [¶] (1) List that witness as an expert under subdivision (f). [¶] (2) *Submit an expert witness declaration.* [¶] (3) Produce reports and writings of expert witnesses under subdivision (g). [¶] (4) Make that expert available for a deposition under subdivision (i)." (Subd. (j)(1)-(4), italics added.) Subdivision (k), in turn, provides, "On motion of any party who has engaged in a timely exchange of expert witness information, the court may grant leave to (1) augment that party's expert witness list and declaration by adding the name and address of any expert witness whom that party has subsequently retained, or (2) *amend that party's expert witness declaration with respect to the general substance of the testimony that an expert previously designated is expected to give.*" (Italics added.) Subdivision (k) goes on to enumerate an exhaustive series of requirements both for making and granting such a motion.[3]

---

[2]As can be seen, the term "expert witness declaration" is something of a misnomer since it is prepared and signed not by the expert, but by either a party or the party's attorney. (2 Cal. Civil Discovery Practice (Cont.Ed.Bar 1998) § 11.20, pp. 952-953.)

[3]"[The] motion shall be made at a sufficient time in advance of the time limit for the completion of discovery under-[Code of Civil Procedure] Section 2024 to permit the deposition of any expert to whom the motion relates to be taken within that time limit. However,

## III. Discussion

 Roy contends that because he "[s]ubmit[ted] an expert witness declaration" (subd. (j)(2)), the trial court was powerless to limit the scope of Duncan's expert testimony no matter how inaccurately the declaration described the general substance of that testimony. We disagree. In our view, the language "[s]ubmit an expert witness declaration" in subdivision (j)(2) refers to submission of a declaration that fully complies with the content requirements of subdivision (f)(2), including the requirement that the declaration contain "[a] brief narrative statement of the general substance of the testimony that the expert is expected to give." (Subd. (f)(2)(B).) If a party wishes to expand the scope of an expert's testimony beyond what is stated in the declaration, it must successfully move under subdivision (k) for "leave to . . . amend that party's expert witness declaration with respect to the general substance of the testimony that an expert previously designated is expected to give."

We begin with the language of the statute. The phrase "expert witness declaration" does not exist in a vacuum. Rather, under subdivision (f)(2), it is a term of art, referring to a declaration that meets each of five separate content requirements. (See *ante*, at p. 144.) It follows that a party "[s]ubmit[s] an expert witness declaration" within the meaning of subdivision

under exceptional circumstances, the court may permit the motion to be made at a later time. This motion shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion. . . . The court shall grant leave to augment or amend an expert witness list or declaration only after taking into account the extent to which the opposing party has relied on the list of expert witnesses, and after determining that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits, and that the moving party either (1) would not in the exercise of reasonable diligence have determined to call that expert witness or have decided to offer the different or additional testimony of that expert witness, or (2) failed to determine to call that expert witness, or to offer the different or additional testimony of that expert witness as a result of mistake, inadvertence, surprise, or excusable neglect, provided that the moving party (1) has sought leave to augment or amend promptly after deciding to call the expert witness or to offer the different or additional testimony, and (2) has promptly thereafter served a copy of the proposed expert witness information concerning the expert or the testimony described in subdivision (f) on all other parties who have appeared in the action. Leave shall be conditioned on the moving party making the expert available immediately for a deposition under subdivision (i), and on such other terms as may be just, including, but not limited to, leave to any party opposing the motion to designate additional expert witnesses or to elicit additional opinions from those previously designated, a continuance of the trial for a reasonable period of time, and the awarding of costs and litigation expenses to any party opposing the motion. [¶] The court shall impose a monetary sanction under [Code of Civil Procedure] Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion to augment or amend expert witness information, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances made the imposition of the sanction unjust." (Subd. (k).)

(j)(2) when it submits a declaration that complies with all of these requirements. (See Kennedy & Martin, Cal. Expert Witness Guide (Cont.Ed.Bar 1998) § 10.25, p. 276 [Subdivision (j)(2) exclusion sanction generally invoked when a party has unreasonably failed to "[s]ubmit an expert witness declaration *that meets the requirements of CCP § 2034(f)(2)*." (Italics added.)].)

A conclusion that the exclusion sanction of subdivision (j) could be invoked only when a party failed to submit an expert witness declaration altogether would render meaningless the elaborate amendment provisions of subdivision (k) (see *ante,* fn. 3), which are expressly cross-referenced in subdivision (j). (See subd. (j) ["Except as provided in subdivision[] (k) . . . ."].) Subdivision (k) presupposes that a designated expert may testify only on the subjects set forth in an expert witness declaration, requiring a party to seek leave to amend the declaration if there are deviations in "the general substance of the testimony that an expert previously designated is expected to give." If a motion to amend an expert witness declaration to add a new area of testimony is denied under subdivision (k), it follows that the testimony is to be excluded under subdivision (j). Otherwise, the denial of the motion to amend would have no practical effect. It seems unlikely the Legislature would provide such a detailed, yet ultimately meaningless, mechanism for determining whether a party should be allowed to amend its expert witness declaration.

The remaining provisions of section 2034 confirm that the Legislature did not intend to do so. Under subdivision (h), for example, "any party who engaged in the [expert witness] exchange may submit a supplemental expert witness list containing the name and address of any experts who will express an opinion on a subject to be covered by an expert designated by an adverse party to the exchange, if the party supplementing an expert witness list has not previously retained an expert to testify on that subject." The conditions under which a party is permitted to submit such a supplemental list are quite strict, however—the party must do so within 20 days after the initial expert witness exchange, must submit an expert witness declaration and all discoverable reports and writings along with the supplemental list, and must make the additional experts available immediately for deposition, even if the time for discovery has expired. (Subd. (h).) These strict procedures again demonstrate that the Legislature intended to allow sufficient time before trial for experts to be identified so that the subject matter of their expected testimony can be fully explored at a deposition.

Indeed, the very purpose of the expert witness discovery statute is to give fair notice of what an expert will say at trial. This allows the parties to

assess whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition, and to select an expert who can respond with a competing opinion on that subject area. "The opportunity to depose an expert during trial, particularly if the testimony relates to a central issue, often provides a wholly inadequate opportunity to understand the expert's opinion and to prepare to meet it. [Citations.]" (Kennedy & Martin, Cal. Expert Witness Guide, *supra*, § 10.18, at p. 267.) "[T]he need for pretrial discovery is greater with respect to expert witnesses than it is for ordinary fact witnesses [because] . . . . [¶] . . . the other parties must prepare to cope with witnesses possessed of specialized knowledge in some scientific or technical field. They must gear up to cross-examine them effectively, and they must marshal the evidence to rebut their opinions." (1 Hogan & Weber, Cal. Civil Discovery (1997) Expert Witness Disclosure, § 10.1, p. 525.) "Late disclosure of experts . . . frustrates the very purposes of the discovery statutes, and should be permitted, with appropriate safeguards and limits, only when absolutely necessary to avoid a miscarriage of justice." (Kennedy & Martin, Cal. Expert Witness Guide, *supra*, § 10.18, at p. 268.)

In this regard, it is difficult to distinguish cases in which a party inaccurately describes the general substance of an expert's expected testimony from cases in which a party wholly fails to disclose an expert. (See *Province* v. *Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1681-1684 [25 Cal.Rptr.2d 667] [percipient witness not listed as an expert improperly permitted to testify as to expert medical opinion], disapproved on other grounds in *Heller* v. *Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41 [32 Cal.Rptr.2d 200, 876 P.2d 999]; *Richaud* v. *Jennings* (1993) 16 Cal.App.4th 81, 90-91 [19 Cal.Rptr.2d 790] [party desiring to call an expert not designated when expert witness information was exchanged must move to augment its expert witness list under subdivision (k)]; *Zellerino* v. *Brown* (1991) 235 Cal.App.3d 1097, 1117-1118 [1 Cal.Rptr.2d 222] [plaintiff's conduct "prejudiced the defense, which did not have the ability to counter the testimony of the belatedly disclosed experts"].) When an expert is permitted to testify at trial on a wholly undisclosed subject area, opposing parties similarly lack a fair opportunity to prepare for cross-examination or rebuttal. It makes little practical difference whether the party proffering the expert testimony failed to submit an expert witness declaration or submitted an inaccurate one.

In reaching a contrary conclusion, the Courts of Appeal in *Castaneda*, *supra*, 36 Cal.App.4th at page 1829, and *Martinez*, *supra*, 12 Cal.App.4th at pages 429-430, relied on a 1987 amendment to the text of subdivision (j). As originally enacted in 1986, subdivision (j) stated, "Except as provided in subdivision[] (k), . . . on objection of any party who has made a complete

and timely compliance with subdivision (f), the trial court shall exclude from evidence the expert opinion of any expert that is offered by any party who has failed to . . . [¶] . . . [¶] (2) State in an expert witness declaration the general substance of the testimony of that expert." (Stats. 1986, ch. 1336, § 2, p. 4756.) The following year, the Legislature passed certain "cleanup" amendments, including amending the foregoing language to sanction a party who unreasonably fails to "[s]ubmit an expert witness declaration." (Stats. 1987, ch. 86, § 17, p. 351.) There is no indication in the legislative history of the amendments as to why this language was changed. In particular, contrary to the suggestion in *Castaneda* and *Martinez*, there is no indication that the Legislature intended to *narrow* the exclusion sanction of subdivision (j) by sanctioning only those parties who unreasonably fail to "[s]ubmit an expert witness declaration" altogether. Rather, the amendment, considered in the context of the statute as a whole, is best viewed as an *extension* of the exclusion sanction to cover *any* unreasonable failure to comply with the expert witness declaration requirements of subdivision (f)(2). (See *ante*, at p. 144.)

Nor are we persuaded by *Castaneda*'s observation that "[t]here are, of course, remedies short of evidence exclusion available to the opposing party when the proponent of the expert testimony fails to comply with the requirement to disclose the general substance of that testimony. . . . The proponent could be required to submit a detailed declaration as to the expert's expected testimony, including a description of the information concerning the subject matter of the action the expert relied on in formulating his or her opinions, the subjects on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each such opinion. [Citation.] The proponent could be required to make the expert available for deposition at the time and place most convenient to the opposing party and to pay all costs and litigation expenses incurred in the deposition. [Citation.] The trial court could allow the opposing party to designate additional experts or elicit additional opinions from those previously designated in order to rebut the testimony of the proponent's expert. [Citation.]" (*Castaneda, supra*, 36 Cal.App.4th at p. 1830.) What the *Castaneda* court failed to appreciate is that nearly all of these "remedies" are already required by subdivisions (f)(2) and (k). (See *ante*, at p. 144 & fn. 3.)

In short, the statutory scheme as a whole envisions timely disclosure of the general substance of an expert's expected testimony so that the parties may properly prepare for trial. Allowing new and unexpected testimony for the first time at trial so long as a party has submitted any expert witness declaration whatsoever is inconsistent with this purpose. We therefore conclude that the exclusion sanction of subdivision (j) applies when a party

unreasonably fails to submit an expert witness declaration that fully complies with the content requirements of subdivision (f)(2), including the requirement that the declaration contain "[a] brief narrative statement of the general substance of the testimony that the expert is expected to give." (Subd. (f)(2)(B).) This encompasses situations, like the present one, in which a party has submitted an expert witness declaration, but the narrative statement fails to disclose the general substance of the testimony the party later wishes to elicit from the expert at trial. To expand the scope of an expert's testimony beyond what is stated in the declaration, a party must successfully move for leave to amend the declaration under subdivision (k).[4]

Turning to the facts of the present case, Roy concedes that he never moved under subdivision (k) to amend Duncan's expert witness declaration to include the subject matter of standard of care. Even if we were to consider his trial counsel's request to expand the scope of Duncan's testimony an implicit motion under subdivision (k), the trial court acted well within its discretion in denying it. Duncan was the last defense witness, testifying in the afternoon of the last day of testimony. Roy did not even attempt to expand the scope of Duncan's expert testimony until just prior to his taking the stand, and Roy's trial counsel offered no excuse for his failure to do so earlier. This late request afforded no practical opportunity for Duncan to be deposed or for Bonds's own experts to rebut Duncan's testimony. On these facts, the trial court properly limited the scope of Duncan's testimony to the general substance of what was previously described in the expert witness declaration.

## IV. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

The petition of appellant Mohan Roy for a rehearing was denied May 19, 1999.

---

[4]*Castaneda, supra,* 36 Cal.App.4th 1818, and *Martinez, supra,* 12 Cal.App.4th 425, are disapproved to the extent they are inconsistent with this opinion.