[No. B148401. Second Dist., Div. One. Feb. 7, 2002.]

KATHY KALABA, Plaintiff and Appellant, v.
ROBERT GRAY, Defendant and Respondent.

**COUNSEL**

Law Offices of Peter J. McNulty, Peter J. McNulty and Daniel S. Glaser for Plaintiff and Appellant.

Carroll, Kelly, Trotter, Franzen & McKenna, Mark V. Franzen, Samantha L. Nguyen and Jennifer Bartlett for Defendant and Respondent.

OPINION

**VOGEL (MIRIAM A.), J.**—Although a designation of *retained experts* must be accompanied by the "expert witness declaration" described in Code of Civil Procedure section 2034, subdivision (f), no expert declaration is required for a *treating physician* who will be called to testify at trial as an expert witness. (*Bonds v. Roy* (1999) 20 Cal.4th 140 [83 Cal.Rptr.2d 289, 973 P.2d 66]; *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31 [91 Cal.Rptr.2d 293, 989 P.2d 720].) But the transformation from treating physician to expert does not occur unless the treating physician is identified by name and address in the proponent's designation, and it is not enough that a plaintiff has "designated" as experts "all past or present examining and/or treating physicians."

FACTS

In 1996, Kathy Kalaba sued Robert Gray, M.D., for medical malpractice, alleging that in 1989 he had negligently failed to find an adrenal tumor. Dr. Gray answered and discovery ensued. In July 1999, in response to Dr. Gray's demand for the exchange of expert witness information, Ms. Kalaba served her designation of expert witnesses. (Code Civ. Proc., § 2034.)[1] As relevant to this appeal, Ms. Kalaba identified two medical experts (Alan Steinberg, M.D., and Barry Pressman, M.D.) and "reserve[d] the right to call as potential experts any and all [of her] past or present examining and/or treating physicians . . . ." In an accompanying declaration, Ms. Kalaba's lawyer described Drs. Steinberg's and Pressman's qualifications, stated as to each that he might "be called to testify on the issues of breach of the standard of care, causation and damages," and set forth the doctors' hourly fees for deposition testimony. Neither the designation nor the accompanying declaration identified any of Ms. Kalaba's past or present treating physicians. In September, Ms. Kalaba served a "De-Designation of Expert Witness" in which she "de-designate[d]" Dr. Pressman and stated that she would "provide the name of her new radiology expert as soon as possible." Dr. Gray deposed all of the experts designated by Ms. Kalaba, but did not depose her treating physicians.

On January 3, 2001, the parties answered ready for trial. On the same day, Ms. Kalaba filed a list of witnesses that included Thomas Boswell, M.D., and Dr. Pressman. Dr. Gray moved to exclude any testimony by Drs. Pressman and Boswell, contending (1) Dr. Pressman had been "de-designated," and (2) Dr. Boswell had not previously been designated. The trial court granted Dr. Gray's motion and denied Ms. Kalaba's oral request to

---

[1]All section references are to the Code of Civil Procedure.

"augment" her designation (but granted her request for a continuance to allow her time to decide whether to "file a writ").[2]

On January 8, Ms. Kalaba's lawyer faxed a letter to Dr. Gray's lawyer stating the plaintiff's position this way: "After due consideration, plaintiff will not be seeking review of the [trial court's] January 3, 2001 decision granting Dr. Gray's motion to exclude . . . . [¶] So as to avoid any claim of surprise, once trial does commence, please be advised that plaintiff does intend to subpoena those treating physicians identified by plaintiff in her deposition and/or in her answers to interrogatories (e.g., Drs. Frumowitz, Julian and Fuchs and perhaps others) and, pursuant to [*Schreiber v. Estate of Kiser, supra*, 22 Cal.4th 31,] ask them expert opinion questions. None of these doctors have agreed to testify and none have been retained. Plaintiff reserved this option of calling her treating doctors in her initial Designation of Expert Witnesses . . . ."[3]

When the parties returned to court for trial, Ms. Kalaba told the court she intended to call three of her treating physicians (Drs. Frumowitz, Julian, and Fuchs) to testify about the standard of care. Dr. Gray objected and moved to exclude expert testimony by the three doctors on the ground that they had not been designated as required by section 2034. Dr. Gray's motion was granted, leaving Ms. Kalaba without any expert testimony to prove that Dr. Gray's failure to find the tumor was below the standard of care. Dr. Gray's motion for nonsuit was granted.

### DISCUSSION

■ Ms. Kalaba contends the trial court should have permitted her treating physicians to testify as experts. We disagree.

### A.

Under section 2034, subdivision (a), any party may demand the exchange of expert witness information. In response, a party may provide either a "list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial," or a "statement that the party does not presently intend to offer the testimony of any expert witness." (§ 2034, subd. (f)(1)(A), (B).) If a designated expert has been retained for

---

[2]At the time of Ms. Kalaba's oral motion to augment, her lawyer told the court that he had "not had the opportunity . . . to review [his] files and see whether or not there was a subsequent designation made." No explanation was offered for counsel's ignorance or for his failure to determine earlier whether a motion to augment would be necessary.

[3]Later, Ms. Kalaba did file a petition for a writ of mandate, but it became moot before we had an opportunity to rule on it.

the purpose of forming and expressing an expert opinion at trial, the designation must also include or be accompanied by a declaration signed by the attorney for the party designating the expert and setting forth a brief narrative statement of the expert's qualifications, the general substance of the testimony the expert is expected to give, a representation that the expert will be sufficiently familiar with the pending action to submit to a deposition, and a statement of the expert's hourly or daily fee. (§ 2034, subd. (f)(2)(A)-(E).)

Subdivision (j) of section 2034 provides that, except when a motion for relief has been granted, and on objection of any party who has himself timely complied with the statute, "the trial court *shall exclude* from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] (1) *List that witness as an expert* . . . . [¶] (2) Submit an expert witness declaration. [¶] (3) Produce reports and writings of expert witnesses . . . . [¶] (4) Make that expert available for a deposition. . . ." (Italics added.)

## B.

In *Bonds v. Roy, supra,* 20 Cal.4th 140, the issue was whether "a trial court may preclude an expert witness from testifying at trial on a subject whose general substance was not previously described in an expert witness declaration." (*Id.* at p. 142.) On the facts of that case, the Supreme Court answered the question affirmatively, explaining that "the statutory scheme as a whole envisions timely disclosure of the general substance of an expert's expected testimony *so that the parties may properly prepare for trial.* Allowing new and unexpected testimony for the first time at trial so long as a party has submitted any expert witness declaration whatsoever is inconsistent with this purpose. We therefore conclude that the exclusion sanction of subdivision (j) applies when a party unreasonably fails to submit an expert witness declaration that fully complies with the content requirements of subdivision (f)(2), including the requirement that the declaration contain '[a] brief narrative statement of the general substance of the testimony that the expert is expected to give.' (Subd. (f)(2)(B).) This encompasses situations, like the present one, in which a party has submitted an expert witness declaration, but the narrative statement fails to disclose the general substance of the testimony the party later wishes to elicit from the expert at trial. To expand the scope of an expert's testimony beyond what is stated in the declaration, a party must successfully move for leave to amend the declaration under subdivision (k)." (*Bonds v. Roy, supra,* 20 Cal.4th at pp. 148-149, italics added.)

In *Schreiber v. Estate of Kiser, supra,* 22 Cal.4th 31, the issue was whether "a trial court may preclude a treating physician, designated as an expert

witness, from testifying at trial regarding causation if no expert witness declaration was submitted on his behalf." (*Id.* at p. 33.) The Supreme Court held that section 2034 does not require the submission of an expert witness declaration for a treating physician, emphasizing at the outset that *"the treating physicians in this case were designated as expert witnesses,"* as required by subdivisions (a)(1) and (f)(1)(A) of section 2034, which requires a " '*list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial.*' . . . Thus, defendants were on notice at the time of the designation that plaintiff intended to offer opinion testimony by her treating physicians. . . .

"[T]he declaration requirement applies to only 'certain' expert witnesses, i.e., those who are parties, employees of parties, or are 'retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial. . . .' (§ 2034, subd. (a)(2); *Bonds v. Roy, supra,* 20 Cal.4th at p. 144.) A treating physician generally falls into none of these categories. . . . Prior to the Civil Discovery Act of 1986, a party was required to describe the general substance of the expected testimony of every expert witness. [Citation.] That is no longer the case. . . . *Hence, treating physicians who will testify as experts must be listed, as they were in this case.* However, . . . '[a]lthough *any person who will be called at trial to give expert testimony must be included on* [*this*] list . . . , the designation of an expert who is an employee of a party or has been specially retained to give expert testimony requires *additional disclosure* in the form of an expert witness declaration . . . . Since a percipient expert acquires his information independently of the party that expects to be calling him, such expert is more like a fact witness. . . .' . . . 'Such an expert would be someone who has acquired, independently of the litigation, personal knowledge of relevant facts, and whose training, skill, and experience enables him or her to form an opinion about those facts . . . .' [Citation.]

"A treating physician is a percipient expert, but that does not mean that his testimony is limited only to personal observations. Rather, like any other expert, he may provide both fact and opinion testimony. As the legislative history clarifies, what distinguishes the treating physician from a retained expert is not the content of the testimony, but the context in which he became familiar with the plaintiff's injuries that were ultimately the subject of litigation, and which form the factual basis for the medical opinion. . . . [¶] . . . [¶] Such a conclusion is also consistent with the discovery statutes as a whole. . . .

"Moreover, *whether a retained expert will testify need not be revealed until shortly before trial.* [Citation.] It makes sense in this situation that the

Legislature would require the person presenting the expert to submit an expert witness declaration. The information contained in this declaration allows the parties to assess within a short time frame 'whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition, and to select an expert who can respond with a competing opinion on that subject area.' [Citation.]

"By contrast, the identity and opinions of treating physicians are not privileged. Rather, because they acquire the information that forms the factual basis for their opinions independently of the litigation, they are subject to no special discovery restrictions. [Citations.] They can be identified early in the litigation through interrogatories, production of the plaintiff's medical records, and completion of case questionnaires which by statute expressly ask for information regarding 'treating physicians.' [Citations.] *Indeed, defendants have a strong incentive to depose treating physicians well prior to the exchange of expert information to ascertain whether their observations and conclusions support the plaintiff's allegations.* [Citation.] Conceivably, some treating physicians may ultimately become defense witnesses. [¶] . . . [¶]

"[T]he Civil Discovery Act of 1986 places litigants on roughly equal footing. To the extent a physician is retained 'for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action,' his identity and opinions are generally privileged unless he testifies. (§ 2034, subd. (a)(2).) Should the physician testify, an expert witness declaration is required. On the other hand, to the extent a physician acquires personal knowledge of the relevant facts independently of the litigation, his identity and opinions based on those facts are not privileged in litigation presenting 'an issue concerning the condition of the patient.' [Citations.] For such a witness, *no expert declaration is required,* and he may testify as to any opinions formed on the basis of facts independently acquired and informed by his training, skill, and experience. This may well include opinions regarding causation and standard of care because such issues are inherent in a physician's work. *An opposing party would therefore be prudent to ask a treating physician at his deposition whether he holds any opinions on these subjects, and if so, in what manner he obtained the factual underpinning of those opinions.*" (*Schreiber v. Estate of Kiser, supra,* 22 Cal.4th at pp. 34-39, most italics added, footnote omitted.)

## C.

The rule we distill from *Bonds* and *Schreiber* is this: Retained experts must be designated, and the designation must be accompanied by the "expert

witness declaration" described in section 2034, subdivision (f). But treating physicians are not "retained experts" within the meaning of section 2034, and no expert declaration is required when a party intends to call a treating physician for the purpose of eliciting expert testimony; it is sufficient if a treating physician is identified by name and address in the proponent's designation of expert witnesses. Where, as here, the treating physicians are not listed or identified by name but simply referred to in the designation as "all past or present examining and/or treating physicians," there has been no compliance with the letter or the spirit of section 2034, and the trial court acts within its discretion when it excludes expert testimony by the non-designated doctors.

Read together, the statutory scheme and the Supreme Court's discussion in *Schreiber* make it clear that a party who intends to call a treating physician as an expert must identify that physician in her designation of experts—and we have not found any authority to support Ms. Kalaba's contention that her discovery responses ought to be viewed as substantial compliance with the specific requirements of section 2034. ■ Discovery responses on the one hand, and expert designations on the other, serve different purposes. Interrogatories and deposition questions are intended to elicit information reasonably calculated to lead to the discovery of admissible evidence, not just admissible evidence and not just the names of witnesses who will actually testify at trial. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶¶ 8:703 et seq., 8:982 et seq.) Expert designations are demanded and exchanged *after* nonexpert discovery has been completed, so that the parties may conclude their final preparations for trial. (§ 2034, subd. (c) [unless ordered otherwise, the specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶¶ 8:1624, 8:1627 ["Without some procedure to discover the identities and opinions of experts hired shortly before trial, there would be flurries of last-minute discovery attempts and motions for continuance of the trial"].)

■ Further complications arise in the medical malpractice context, where there may be no reason for a defendant to depose every treating physician, notwithstanding the need to depose all experts. Although the Supreme Court has suggested that "[a]n opposing party would . . . be prudent to ask a treating physician at his deposition whether he holds any opinions on [the matters about which expert testimony will be required at trial], and if so, in what manner he obtained the factual underpinning of those opinions" (*Schreiber v. Estate of Kiser, supra,* 22 Cal.4th at p. 39), the Supreme Court has *not* suggested that, to be prudent, defense counsel ought

to depose every treating physician *without regard to whether the treating physician has been designated as an expert.* Whatever merit there may be to the suggestion that, in an automobile accident case such as *Schreiber,* "defendants have a strong incentive to depose treating physicians well prior to the exchange of expert information" (*Schreiber v. Estate of Kiser, supra,* 22 Cal.4th at p. 38), there are many medical malpractice cases in which an effort to depose *all* treating physicians would be both unnecessary and prohibitively expensive. Medical malpractice cases are complex and sufficiently expensive to prosecute and defend as it is, and there is nothing in *Schreiber* to suggest an intent by the Supreme Court to impose further *unnecessary* economic burdens on either side.[4] As for us, we see absolutely no reason to encourage more depositions than reasonably necessary in any particular case, and no reason to reward a party whose lawyer has failed to comply with either the letter or the spirit of the Civil Discovery Act.

## Disposition

The judgment is affirmed. Dr. Gray is awarded his costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

---

[4] In this case, for example, there are 18 nonparty physicians named on Ms. Kalaba's witness list.