Filed 4/30/14  Clayton v. Marin Mortgage Bankers CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOLENE C. CLAYTON, <br><br>       Plaintiff and Respondent, <br><br> v. <br><br> MARIN MORTGAGE BANKERS CORPORATION et al., <br><br>       Defendants and Appellants. | A138364 <br><br> (Marin County <br> Super. Ct. No. CIV 1101598) |

Plaintiff Jolene C. Clayton (plaintiff) lost her investment in a security instrument when the borrower on the underlying loan defaulted.  She filed suit against the parties involved in the sale and packaging of the instrument, defendants Marin Mortgage Bankers Corporation (MMBC), Charles J. Flynn and Mik P. Flynn as trustees of the Flynn Family Living Trust dated May 7, 1999, Charles J. Flynn individually, and Glenn Larsen (Larsen).  Defendants appeal from a judgment entered in plaintiff's favor following a directed verdict on statutory claims under the Corporations Code and a jury verdict on common law causes of action for breach of fiduciary duty, negligence and negligent misrepresentation.  We affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Our recitation of the facts and procedural history is somewhat hamstrung by defendants' selective designation of the documents and oral proceedings to be included in the record on appeal.  The clerk's transcript does not contain the complaint, the answer or

1

the jury instructions; the reporter's transcript is limited to the cross-examination of plaintiff at trial, the trial testimony of plaintiff's expert, the proceedings on plaintiff's motion for a directed verdict, and the hearing on a motion for new trial filed by defendants, even though a number of other witnesses testified at trial. A summary of the record follows.

Between the late 1990s and the early 2000s, plaintiff made a series of investments in real estate notes through MMBC, "a California licensed real estate broker that makes and acquires mortgage loans in the state of California." Larsen, a real estate broker, was the president and sole shareholder of MMBC. Charles Flynn, also a licensed real estate broker, was a sales agent for MMBC. Up until 2006, plaintiff's investments were successful, with plaintiff receiving interest-only payments for a set period of time and then getting the principal back in a lump sum at the end of the term.

In 2006, MMBC issued a private offering for fractionalized interests in a $1.27 million promissory note and deed of trust on a piece of commercial property in San Francisco, known as the "600 Alabama Note." The summary of the offering in the memorandum prepared by MMBC states, "The Fractional Interests are undivided interests in loans secured by a deed of trust on California real property or secured by one or more promissory notes that are themselves secured by a deed of trust on California property." Charles Flynn and Mik Flynn, as trustees of their family trust, were the original owners and holders of the 600 Alabama Note.[1] Plaintiff invested $150,000.

The disclosure statement given to plaintiff indicated the note was secured by three pieces of real property owned by the borrowers: the commercial property located at 600 Alabama Street, which had a stated market value of $3.5 million and a senior encumbrance of over $2.162 million; a residential duplex located on 24th Street, which had a stated market value of $3.2 million and a senior encumbrance of $1.4 million; and residential property on Portola Drive with an unspecified market value and amount of senior encumbrances. The disclosure form did not indicate the borrowers owned only a

---

[1] Although many portions of our analysis do not apply to Mik Flynn, who did not act in the capacity of a licensed broker, we refer to the defendants collectively.

two-thirds share of the Alabama Street property, nor did it reveal the property taxes on that parcel were $38,183.99 in arrears. Although the valuation of the 24th Street duplex was based on the assumption a third unit would be added and the property marketed as a multi-unit tenancy-in-common building, no qualified appraisal of that property was provided as required by law.

The terms of the underlying loan were modified by MMBC to release the 24th Street duplex as collateral, as the borrowers had decided to sell that property rather than attempt to add a third unit. Later, the borrowers defaulted on the 600 Alabama Note. In January 2010, MMBC notified plaintiff the property would be foreclosed upon and they would be negotiating with the senior lender. Plaintiff never recovered the principal of her investment, though it was stipulated at trial she received $24,791.67 in interest payments before the borrowers defaulted.

Plaintiff filed a complaint against defendants seeking rescission of the 600 Alabama Note and damages under Corporations Code sections 25401, 25501 and 25504, as well as common law causes of action for breach of fiduciary duty, constructive fraud, negligence, negligent misrepresentation and fraud. The case proceeded to a jury trial, at which plaintiff obtained a directed verdict on the cause of action containing the statutory claims, and jury verdicts in her favor on her causes of action for breach of fiduciary duty, negligence and negligent misrepresentation. Judgment was entered in an amount of $196,058.33, which reflected plaintiff's investment of $150,000, plus interest at an amount of 7 percent from the date of investment to the date of judgment, less the interest income earned by plaintiff as a result of the investment. Defendants appeal.

## II. DISCUSSION

### a. *Scope of Testimony by Plaintiff's Expert*

Plaintiff designated S. Guy Puccio as an expert witness qualified to testify on "[t]he duties and obligations of a broker and affiliated persons in underwriting, packaging and selling fractionalized interests in secured real estate loans, including issues concerning standard of care and fiduciary duties." Defendants argue the trial court

3

abused its discretion in denying a motion to strike portions of Puccio's trial testimony as beyond the scope of the expert witness designation. We disagree.

          1. *Puccio's Testimony*

Puccio testified the 600 Alabama Note was a security subject to California securities law and, in particular, Corporations Code sections 25401, 25501 and 25504. As licensed real estate brokers acting on behalf of plaintiff, defendants MMBC, Larsen and Flynn owed a fiduciary duty to plaintiff to act with the utmost care, to disclose all material facts about the transaction, and to discuss the investment risks relevant to the transaction. Puccio identified several material facts defendants failed to disclose to plaintiff, including (1) Larsen's real estate license was restricted; (2) information about the borrowers' ability to repay the underlying loan; (3) the amount of fees, costs, expenses and commissions earned by defendants or other third parties; (4) the true market value of the real properties securing the loan, as assessed by a qualified appraiser; (5) the fact the borrowers owned only a two-thirds interest in the Alabama Street property, and the other owner was not on the loan; and (6) the amount of delinquent property taxes. Puccio noted that Charles Flynn and his wife Mik Flynn were the original owners of the note, creating a potential conflict of interest that was not disclosed to plaintiff. He was critical of MMBC's release of the 24th Street property as collateral on the loan because that decision reduced the protective equity securing the loan.

Puccio explained that sales of fractionalized notes were limited to California residents and thus were not subject to federal regulation by the Securities and Exchange Commission (SEC). All the brokers in this transaction had a duty to satisfy themselves that plaintiff, who testified she had lived on and off in Stinson Beach for two months at a time, was a California resident. The broker defendants were also obligated to ascertain whether she was a qualified investor; at a minimum, the investment should not exceed 10 percent of an investor's income or net worth. Puccio saw no evidence that plaintiff was a suitable investor, because she did not have the capacity to protect her position, that is, to step forward and make payments if the borrower defaulted.

2. *Motion to Strike*

At the conclusion of Puccio's direct examination, counsel for defendants made a motion to strike "a portion of" Puccio's testimony under Code of Civil Procedure sections 2034.210 through 2034.300, on the ground that the expert witness declaration had not provided fair notice of the subjects he would cover. Counsel argued Puccio's declaration, which generally referred to the subjects of "underwriting, packaging and selling fractionalized interests in secured real estate loans, including issues concerning standard of care and fiduciary duties," did not encompass securities laws or possible SEC violations.

Plaintiff's counsel responded that because the complaint contained causes of action for securities violations under the Corporations Code, it was reasonable to expect an expert on a broker's fiduciary duties to discuss securities issues. Counsel also noted defendants had not participated in the exchange of expert witness information. The court denied the motion, indicating the expert declaration was "general enough to cover all of the areas that he actually did cover."

3. *Analysis*

The procedure for exchanging expert witness information during discovery is governed by Code of Civil Procedure section 2034.010 et seq. The purpose of these provisions "is to give fair notice of what an expert will say at trial." (*Bonds v. Roy* (1999) 20 Cal.4th 140, 146 (*Bonds*).) "This allows the parties to assess whether to take the expert's deposition [and] to fully explore the relevant subject area at any such deposition . . . ." (*Id*. at pp. 146-147.)

The expert witness exchange is triggered by a timely written demand made by any party after the initial trial date is set. (Code Civ. Proc., § 2034.220.) Code of Civil Procedure section 2034.260 sets forth the general requirements for the exchange and the information to be provided, which includes a list of the names and addresses of the experts, a declaration by the party's attorney setting forth the expert's qualifications, and "a brief narrative statement of the general substance of the testimony that the expert is expected to give." (Code Civ. Proc., § 2034.260, subds. (b)(1), (c)(1) & (2).)

5

Subject to exceptions not relevant here, "*on objection of any party who has made a complete and timely compliance with Section 2034.260*, the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] . . . [¶] . . . (b) Submit an expert witness declaration." (Code Civ. Proc., § 2034.300, italics added.) A trial court may exclude not only the testimony of an expert for whom no declaration was provided, but that portion of the testimony that goes beyond the scope of the declaration. (*Bonds*, *supra*, 20 Cal.4th at pp. 148-149.) We review a trial court's ruling on the admissibility of expert testimony for abuse of discretion. (*Easterby v. Clark* (2009) 171 Cal.App.4th 772, 778.)

Defendants' challenge to portions of Puccio's testimony as beyond the scope of the expert witness declaration fails for several reasons. First, defense counsel's oral motion to strike did not clearly delineate those portions of the testimony defendants sought to have stricken—counsel made only a general reference to the testimony concerning securities and possible SEC violations after Puccio's direct examination was completed. The failure to lodge a timely and specific objection to expert testimony generally forfeits a challenge to that testimony on appeal. (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563; Evid. Code, § 353.)

Second, defendants have not included the expert witness exchange documents in the record on appeal, and plaintiff's counsel represented to the trial court (without contradiction) that the defense had not participated in the expert exchange. Code of Civil Procedure section 2034.300, which authorizes the exclusion of expert testimony under certain circumstances, requires an objection by a party "who has made a complete and timely compliance with Section 2034.260" [governing the expert exchange procedure].

Third, the court did not abuse its discretion in concluding the expert declaration was broad enough to include the challenged portions of Puccio's testimony, as his explanation of California securities law and possible SEC violations fell within the "general ambit" of whether the defendants breached their fiduciary duties to plaintiff.

6

(See *Jones v. Moore* (2000) 80 Cal.App.4th 557, 566.) Plaintiff's statutory cause of action for violations of the Corporations Code placed the defendants on notice that any expert testimony regarding the breach of care and fiduciary duty would include a discussion of what was required under those statutes.

Fourth, even if we assume the court should have excluded portions of Puccio's testimony, defendants must demonstrate the error was prejudicial, that is, that it is reasonably probable it affected the verdict. (*Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1556 (*Amerigraphics*).) As we observed in our description of the facts and procedural history, *ante*, defendants have designated only select portions of the trial transcripts as part of the record on appeal, and the only evidence available for our review is the cross-examination of plaintiff and the examination of Puccio. Absent a transcript of the remaining trial evidence, we have no way of ascertaining whether it is reasonably probable Puccio's testimony affected the verdict. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).)

b. *Motion for Directed Verdict*

Defendants argue the trial court erred in granting plaintiff's motion for a directed verdict on the statutory cause of action under Corporations Code sections 25401, 25501 and 25504. In light of the limited appellate record, we disagree.

" 'A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been rendered. [Citations.] . . . A motion for a directed verdict may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant.' " (*Newing v. Cheatham* (1975) 15 Cal.3d 351, 358-359.)

At the time of the transaction in this case, Corporations Code section 25401 provided, "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which

7

includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." (Stats. 1968, ch. 88, § 2, p. 279, operative Jan. 2, 1969.) Corporations Code section 25501 provides a private cause of action for a violation of section 25401 and a formula for calculating damages. Corporations Code section 25504 imposes joint and several liability on persons standing in various relationships to a person liable under these provisions.

The trial court granted plaintiff's motion for directed verdict, finding (1) defendants' statement that property taxes at the 600 Alabama property were not delinquent was "factually absolutely wrong"; (2) the $3.2 million fair market value of the 24th Street duplex, based on a broker evaluation, was wrong; (3) the defendants had "zeroed out" the amount of the borrowers' income and the amount of other mortgage payments due on the property; and (4) these were material errors and misstatements of material fact.

Puccio's testimony, previously summarized, supports the trial court's determination defendants violated Corporations Code section 25401 by including misstatements and omissions of material facts in the disclosure forms provided to plaintiff. We cannot assess whether other evidence would have supported a verdict in favor of defendants, because defendants have elected to provide only an abbreviated version of the trial testimony in the record on appeal. It is well established that error on appeal must be affirmatively shown, that the party appealing has the burden of providing an appellate record demonstrating the alleged error, and that failure to provide an adequate record on an issue requires that the issue be resolved against the appealing party. (*Defend Bayview Hunters Point Com. v. City and County of San Francisco* (2008) 167 Cal.App.4th 846, 859-860.) On the record before us, defendants have not established the trial court ruled incorrectly on the statutory cause of action. (See *Ballard*, 41 Cal.3d at p. 574.)

Even if we accepted defendants' argument that the materiality of the misrepresentations and omissions was a factual question, the jury resolved that issue

8

against defendants when it rendered verdicts in plaintiff's favor on the breach of fiduciary duty and negligent misrepresentation claims. In connection with the former claim, the jury specifically found a failure to learn of or disclose material information. In connection with the latter claim, the jury determined the defendants made a false representation of an important fact to plaintiff. In light of these determinations, it is not reasonably probable the jury would have found the misrepresentations in connection with the statutory cause of action were not material. (*Amerigraphics*, *supra*, 182 Cal.App.4th at p. 1556.)

### c. *Verdict Forms*

Defendants argue the special verdict forms were defective because they did not allow the jury to offset the amount of interest income received by plaintiff against the sum she originally invested when calculating her damages. Any error in this regard was harmless because the parties stipulated to the amount of interest income at trial ($24,791.67) and the court deducted that figure from the damages and interest awarded in calculating the amount of the judgment.

### III. DISPOSITION

The judgment is affirmed. Plaintiff shall recover her ordinary costs on appeal.

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.

9