Filed 5/15/26  Montez v. Perez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| VICTOR MONTEZ et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>DENNIS PEREZ,<br><br>    Defendant;<br><br>FARMERS DIRECT PROPERTY & CASUALTY INSURANCE CO.,<br><br>    Intervener and Appellant. | B333369<br><br>(Los Angeles County<br>Super. Ct. No. MC027758) |

APPEAL from a judgment of the Superior Court of Los Angeles County, J. Stephen Czuleger, Judge.  Reversed in part, affirmed in part and remanded with directions.

Horvitz & Levy, Mitchell C. Tilner, Melissa B. Whalen; Wesierski & Zurek, Christopher P. Wesierski and Michelle R. Prescott for Intervener and Appellant.

Parris Law Firm, R. Rex Parris, Khail A. Parris, Bruce L. Schechter and Misak Chanchikyan, for Plaintiffs and Respondents.

––––––––––––––––––––––––––

Farmers Direct Property & Casualty Insurance Co. (Farmers) appeals from a judgment entered in favor of Victor Montez and his wife Lisa Montez[1] after a jury trial.  After Victor sustained significant injuries in a car crash with a drunk driver, he and Lisa sued the driver for negligence and loss of consortium.  Farmers intervened after the driver stopped participating in the case and went to prison for felony drunk driving.  A jury awarded the Montezes a total of $8,862,730 in damages, including $1,002,730 for Victor's past medical costs and $5,360,000 for future medical expenses.  The award of economic damages for the medical costs totaling $6,362,730 is the only part of the judgment at issue here.

Farmers contends the trial court erred by allowing the Montezes' life care planning expert to testify at trial about the costs of Victor's past and future medical care because the subject was outside the scope of his expert disclosure and deposition testimony.  Farmers further asserts the verdict on the medical costs lacked substantial evidence because the expert improperly relayed another expert's opinions regarding the medical costs, and therefore the testimony was hearsay and lacked foundation.  We agree the court should not have admitted the challenged expert testimony on costs, the only evidence at trial regarding the

––––––––––––––––

[1]     We refer to Victor Montez and Lisa Montez by their first name for clarity's sake.

2

medical expenses, because it exceeded the scope of the expert's disclosed subjects. We therefore reverse and remand for a new trial limited to economic damages.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Car Accident, the Complaint, and Farmers' Intervention*

In 2017 Perez was driving under the influence of alcohol and at a high rate of speed when he lost control of his car and collided head-on with Victor's car. Victor suffered significant injuries. He was hospitalized for 40 days, transferred to a rehabilitation center for an additional three weeks, and then continued to need significant medical care and treatments once he returned home. Victor returned to work six months after the collision but continued to experience complications and pain from his injuries and retired three years later.

In May 2018 Victor and Lisa sued Perez for negligence and loss of consortium. Perez answered the complaint, denying liability and asserting comparative fault and other affirmative defenses.

Perez stopped participating in the case, and in June 2021 the trial court granted Farmers' motion to intervene. The court then struck Perez's answer and entered his default. In a criminal case, Perez pleaded no contest to a violation of Vehicle Code section 23153 for felony drunk driving, and he was sentenced to state prison.

B. *Discovery*

Both parties designated numerous experts. The Montezes designated Thomas Zweber as a "Physiatrist Life Care Planning

3

Specialist" who would testify about "the nature, extent and cause of [Victor's] injuries and the medical needs," and "any life care planning needs of [Victor] as well the reasonableness of past medical care, and the cost of future health care expenses, including, but not limited to, assessment of [Victor's] future care needs and associated costs."  They also designated Andrew Morris as a "Life Care Planner/Medical Biller" and stated Morris would testify about "the reasonableness of past medical care and treatment for [Victor and] the assessment of the costs of [Victor's] future care."

Zweber issued a draft report on September 6, 2021.  His report identified categories of medical care Victor would need, including medications, procedures, professional services "for independen[ce] and quality of life," home modification, and therapy.  There were no dollar amounts associated with the costs categories, other than for plastic surgery.

Several days later, Farmers deposed Zweber.  Zweber stated his testimony would address, in relevant part, "any life care planning needs of the plaintiff," "the reasonableness of past medical care," "the cost of future healthcare expenses," and "plaintiff's future care needs associated with the cost."  He testified the "care outlined" in his life care plan was complete, but the cost summary was not.  The cost summary would be completed "[s]ometime soon and certainly before trial."  Zweber acknowledged the "costing of care" is an important component of a life care plan.

When discussing the addition of cost figures, Zweber explained the law firm representing the Montezes had retained an economist to calculate the costs and add them to the life care plan, and "the draft report will become a final report when I go

over that and go item by item to make sure that it is reasonable." Zweber explained, "In many of the life care plans that I put together, I collaborate with somebody to actually use the resources that [are] acceptable in the industry [and] apply the costs. This is a draft report. I review the final report and go line-by-line and look at the resources and ... at times I do some modification to the costs if ... it needs to be adjusted one way or another." Zweber ultimately would confirm that the numbers supplied by the economist were correct and reasonable.

When Farmers' counsel asked questions suggesting one needs to know the actual cost estimate to evaluate the reasonableness of the care plan, the Montezes' counsel interrupted and stated, "Counsel, let me put a stop to this. We have other experts for the line of questioning that you have. It is on your designation. You can't sit here and harass one of our experts as to the topic that he has not been retained for. He's a life—he was retained to provide a life care plan, future treatment that Mr. Montez will need. There are other experts that will give opinions as to how much that future treatment costs." At another point he stated, "We have one expert who is going to be giving opinions as to future treatment [i.e., Zweber], another expert who is going to be giving opinions as to the costs of each specific future treatment." In response to further questioning of Zweber regarding the costs, the Montezes' counsel again interjected that "[t]here is a difference between the experts that we have. You are asking one expert to give opinions as to multiple different things. ... There is a difference between a life care planner and a medical biller. There is a big difference." Farmers' counsel then asked Zweber about the methodology for calculating future costs, and the Montezes' counsel objected before Zweber could respond,

5

stating, "Lacks foundation and outside the scope. He's not a medical biller at this time."

At the end of Zweber's deposition, Farmers' counsel asked, "Does this report contain all of the opinions you intend to offer at trial as of today?" Zweber confirmed it did, and stated there were no other opinions he intended to offer to the jury that counsel had not asked him about.

After Zweber's deposition, Farmers requested a final report from Zweber that included the cost figures at least five times and asked to meet and confer with the Montezes' counsel about Zweber's opinions. Farmers repeatedly attempted to set up a second deposition session for Zweber based on his representations in his original deposition that he had additional work to do. Farmers served a deposition notice that noticed Zweber's deposition again and demanded Montez produce any further reports by Zweber. In January 2022, Montez's counsel responded, "We are not producing Dr. Zweber because he does not have new opinions. If he generates new opinions we will let you know."

C.    *Evidence at Trial*

A 10-day trial began in June 2023. The evidence at trial largely focused on the extent of Victor's injuries and his past and anticipated future medical care, as well as his noneconomic damages. The Montezes called numerous treating physicians and experts, including a radiologist, a trauma surgeon, two expert orthopedic surgeons, a treating general surgeon, a treating orthopedic trauma surgeon, three treating orthopedic surgeons, a treating trauma surgeon, a treating neuroradiologist, a treating neuropsychologist, an expert neurosurgeon, an expert plastic surgeon, an expert psychologist, an expert psychiatrist, and

6

two treating psychiatrists, to testify about the extent of Victor's injuries and the care he would need in the future. Victor would need additional surgeries, injections, therapies, and medications. Other than testimony about ketamine therapy, which was not included in the life care plan, none of the treating doctors or experts testified about the cost of Victor's past or future medical care.

When Zweber testified on behalf of the Montezes, the Montezes' counsel asked for his determination as to the "total amount of medical expenses incurred as a result of the crash." Farmers objected under *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 (*Kennemur*) (a seminal case regarding the requirement that experts' trial testimony stay within the scope of their pretrial disclosures), and the court overruled the objection. After having his recollection refreshed with Morris's report, Zweber testified Victor's total past medical expenses were $1,002,730, although he did not know what portion of that Victor had actually paid. The court overruled Farmers' motion to strike based on *Kennemur*, hearsay, and *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).

Zweber also testified regarding his life care plan for Victor. A life care plan is a comprehensive assessment of a patient's current and future medical needs. He explained that developing a life plan involves identifying the patient's medical conditions and determining which conditions are attributable to the accident. Zweber testified he had organized Victor's anticipated care into 11 categories, such as physician and professional costs ("doctors, psychologists, neuropsychologists, at times chiropractic"), medications, and "surgical and interventional" ("things like knee surgeries, hip surgeries, shoulder surgeries,

7

pain injection therapies, biologic injections, [and] steroid injection[s]").

As Zweber described each category in the life care plan, the Montezes' counsel added each to a posterboard. Counsel also created a separate chart with dollar amounts for each category. Over Farmers' renewed *Kennemur* objection, Zweber estimated the cost for future care at $5.36 million.

On cross-examination, Zweber confirmed the life care plan produced in discovery had contained no cost figures. He explained the plan included the information necessary for a cost analyst "to take it the next step and do the actual dollar costing process." Zweber's hourly rate was higher, so Morris, who was "expert at costing out care, did the full costing of this life care plan." Zweber stated, "before I sign off on the final report, I will review line-by-line and resources used for the final costs." He "had a lengthy conversation with" Morris when "the numbers essentially came out" and the two "went over the numbers and the sourcing and so forth." Zweber confirmed he did not prepare a final report that contained the cost figures.

In closing, the Montezes relied on Zweber's estimates and asked the jury to award $1,002,730 in past medical expenses and $5,360,000 in future medical costs. Farmers asked the jury to award $475,000 in past medical expenses for Victor and no damages for his future medical expenses because of insufficient proof.

D. *The Directed Verdict, the Jury Award, and Farmers' New Trial Motion*

After the close of evidence, the Montezes moved for a partial directed verdict on liability. The trial court granted the motion, finding Perez liable for the crash and concluding there

8

was no evidence Victor contributed to the collision. The only issues left for the jury were damages.

During deliberations, the jury requested Zweber's "future cost breakdown." Over Farmers' renewed objections under *Kennemur* and *Sanchez*, the court admitted the demonstrative posterboards from Zweber's testimony into evidence and sent them to the jury room.

The jury returned its verdict the same day. It awarded the amounts reflected on the posterboards: $1,002,730 for past medical expenses and $5,360,000 for future expenses. The jury also awarded Victor $1,500,000 in past noneconomic damages and $1,000,000 in future noneconomic damages, for a total of $8,862,730, and it awarded Lisa $25,000 for loss of consortium.

Farmers moved for a new trial on economic damages for past and future medical expenses. It argued the trial court should have excluded Zweber's testimony on costs under *Kennemur* and *Sanchez*, and that substantial evidence did not support the jury's economic damages award. Counsel for Farmers declared in support of Farmers' motion for new trial that "[o]ur office was never informed by Plaintiffs' counsel that Dr. Zweber had updated his opinions to include future costs, nor that he intended to offer opinions as to the past medical costs. Plaintiffs' counsel represented to our office that the opinions regarding future medical costs were to be provided by their expert Dr. Morris."

The trial court denied the motion. It reasoned Zweber's opinions were "fully explored" in his deposition and "all opinions he expressed at trial were within those general subject matter areas." As to the sufficiency of the evidence, the court ruled there

9

was adequate foundation for the testimony and "more than sufficient evidence to support the medical damages award."

Farmers timely appealed.

## DISCUSSION

Farmers contends the trial court abused its discretion by allowing Zweber to offer "surprise testimony at trial about the total cost of [Victor's] past and future medical care."  Farmers argues the error was prejudicial.  We agree.

A.     *Applicable Law and Standard of Review*

For every expert witnesses a party intends to call at trial the party must provide to the other side an "expert witness declaration" (Code Civ. Proc., § 2034.210, subd. (b))[2] that includes "[a] brief narrative statement of the general substance of the testimony that the expert is expected to give" and "[a] representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including an opinion and its basis, that the expert is expected to give at trial" (*id.*, § 2034.260, subd. (c)(2), (4)).  After serving an expert witness declaration, the litigant must make its designated expert available for a deposition.  (*Kennemur*, *supra*, 133 Cal.App.3d at pp. 918-919.)

The purpose of the expert witness discovery scheme "is to give fair notice of what an expert will say at trial.  This allows the parties to assess whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition,

---

[2]     Undesignated code references are to the Code of Civil Procedure.

10

and to select an expert who can respond with a competing opinion on that subject area. ...  [T]he need for pretrial discovery is greater with respect to expert witnesses than it is for ordinary fact witnesses [because] ... .  [¶] ... the other parties must prepare to cope with witnesses possessed of specialized knowledge in some scientific or technical field.  They must gear up to cross-examine them effectively, and they must marshal the evidence to rebut their opinions.' "  (*Bonds v. Roy* (1999) 20 Cal.4th 140, 146-147; accord, *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 780.)  "After a witness has denied at his or her deposition having reached opinions on a particular subject, the defendant is entitled to rely on that disclaimer 'until such time as appellant disclosed that [the expert witness] had conducted a further investigation and had reached additional opinions in a new area of inquiry.' " (*Dozier v. Shapiro* (2011) 199 Cal.App.4th 1509, 1519.)

If the narrative statement or the expert's deposition testimony " 'fails to disclose the general substance of the testimony the party later wishes to elicit from the expert at trial,' " a trial court must exclude the expert testimony. (*Jogani v. Jogani* (2026) 118 Cal.App.5th 823, 885, review filed Apr. 6, 2026 (*Jogani*), quoting *Bonds v. Roy*, *supra*, 20 Cal.4th at p. 149; see *Jones v. Moore* (2000) 80 Cal.App.4th 557, 564-565 [expert's trial testimony that went beyond deposition testimony was properly excluded; although plaintiff's expert witness declaration arguably was broad enough to encompass later testimony at trial, "in his deposition he testified as to certain specific opinions, said those were his only opinions, and if he had others he would notify defense counsel"]; *Kennemur*, *supra*, 133 Cal.App.3d at p. 919; § 2034.300, subd. (b).)  "A trial court should exclude an expert opinion based 'on a party's right to rely

on the other party's expert's express representation that the opinions expressed during an expert deposition are the only ones that need be met at trial,' because in such circumstances 'it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial.' " (*Jogani*, at p. 885; accord, *Jones*, at p. 565.)

We review evidentiary rulings for abuse of discretion. (*Adoption of X.D.* (2025) 114 Cal.App.5th 812, 831.)  We will not disturb a trial court's admissibility ruling " 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Pineda* (2022) 13 Cal.5th 186, 222; *Alliance San Diego v. California Taxpayers Action Network* (2025) 114 Cal.App.5th 1121, 1151.)  "An ' "erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' " (*K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 760.)

B.       *The Court Abused Its Discretion by Allowing the Montezes'*
         *Expert To Testify About the Subject of Medical Costs that*
         *Exceeded the Scope of His Disclosure and Deposition*
         *Testimony*

Zweber's expert witness declaration provided pursuant to section 2034.210 stated he would opine on the "reasonableness of past medical care," but not on the past medical costs.  While the expert declaration stated he would testify about "the cost of future health care expenses," the draft report produced prior to his deposition identified categories of anticipated life care needs, such as medications and procedures, but it assigned no dollar amounts to those categories except for plastic surgery.

12

At his deposition, counsel for the Montezes attempted to question Zweber about the actual costs tied to the life care categories, but Zweber said the cost figures did not yet exist. Zweber and the Montezes' counsel represented that another expert (Morris) would supply those cost opinions missing from the draft report and stymied questioning on the subject. For example, when Farmers' counsel asked Zweber about the methodology for calculating future costs, Montezes' counsel objected before Zweber could respond, stating, "Lacks foundation and outside the scope. He's not a medical biller at this time." Multiple times the Montezes' counsel represented a different expert would be testifying about the cost figures and Zweber was retained only to provide a life care plan.

At the end of Zweber's deposition, Farmers' counsel asked whether the report contained all opinions Zweber intended to offer at trial. Zweber confirmed it did and stated he had no additional opinions that had not been covered.

Although Zweber testified his report was "a draft report," and he would need to review a later "final report" (with costs added) line by line to assess the reasonableness of those estimated costs, counsel for the Montezes never provided an updated final report with the cost numbers and denied Farmers an opportunity to examine Zweber on an updated life plan with costs added. After the original deposition of Zweber, Farmers sent counsel for the Montezes at least five demands for a final report containing the missing cost figures. Farmers also repeatedly sought to take a second deposition of Zweber on the subject of costs. The formal deposition notice it served also demanded the production of any further reports by Zweber.

In January 2022, the Montezes' counsel responded, "We are not producing Dr. Zweber because he does not have new opinions. If he generates new opinions we will let you know." No supplemental disclosure followed, and Farmers' counsel declared in support of Farmers' motion for new trial that the Montezes' counsel never informed Farmers that Zweber had updated his opinions to include future costs or that he intended to testify about past medical costs, and instead represented that those opinions would come from Morris.

Farmers had a right to rely on the representations of the opposing party that the opinions Zweber expressed during his deposition were the only ones that needed to be met at trial. (*Jones v. Moore*, *supra*, 80 Cal.App.4th at pp. 565-566.) Because Zweber confirmed he had no additional opinions beyond those disclosed at his deposition, and because those disclosed opinions did not include the cost of medical care, the trial court should not have allowed him to testify on that subject at trial. (See *Jogani*, *supra*, 118 Cal.App.5th at p. 886 [trial court erred in allowing expert to testify about damages for lost investments when expert's "answers at deposition did not fairly disclose" his opinion and at deposition he "expressly restricted his opinion"]; *Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 450 [expert testimony properly excluded at trial where party's expert did not disclose subject of his testimony and party refused to make expert available to be deposed on additional opinions he intended to provide]); *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 98 [expert properly precluded from opining about costs where the disclosure did not identify that area of testimony and expert stated in deposition that he was not asked to offer an opinion on that subject]; *Amtower v. Photon Dynamics, Inc.* (2008)

14

158 Cal.App.4th 1582, 1599 [trial court "properly prohibited any opinions relating to the fraud causes of action since [plaintiff's expert] had testified at his deposition that he had formed no opinions on those causes of action"]; cf. *Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 595 [trial court erred in excluding testimony where an expert "had previously disclosed the general substance of his opinion and "did not disavow that opinion at any time," and the opposing party "had the opportunity to examine his opinion on those matters before trial"].)  Farmers was deprived of " ' "fair notice of what an expert will say at trial" ' " and " ' "a fair opportunity to prepare for cross-examination or rebuttal." ' "  (*Dozier v. Shapiro*, *supra*, 199 Cal.App.4th at p. 1519.)  The trial court thus abused its discretion by allowing Zweber to testify at trial about the costs of Victor's past and future medical care.

The court's error was prejudicial.  Zweber's testimony supplied the only evidence of the costs of Victor's past and future medical care.  In closing, the Montezes relied on Zweber's figures in requesting the jury award past and future medical costs as economic damages.  The jury undeniably relied on that testimony; it awarded the exact amounts reflected on the posterboards used during Zweber's testimony—$1,002,730 for past medical expenses and $5,360,000 for future medical expenses.  (See *Jogani*, *supra*, 118 Cal.App.5th at p. 887 [error in admitting undisclosed expert testimony was prejudicial where testimony provided the only evidence of component of damages and jury awarded the exact amount from expert's opinion].)  And, as discussed, Farmers lacked a reasonable opportunity to test those opinions.  There is thus a " ' " 'reasonable probability that a result more favorable to the appealing party would have been

15

reached in the absence of the error.' " ' " (*K.M. v. Grossmont Union High School Dist.*, *supra*, 84 Cal.App.5th at p. 760.)

C.    *A Limited Retrial on the Issue of Economic Damages Is the Appropriate Remedy*

Farmers contends that with Zweber's inadmissible testimony excised, the award of economic damages was not supported by substantial evidence, and the proper remedy is to "reverse the judgment with directions to eliminate the award of economic damages" rather than remand for a retrial. Even assuming the economic damages verdict lacked substantial evidence, however, a retrial on the issue is the proper remedy in these circumstances.

We recognize that "[i]f the plaintiff had a 'full and fair opportunity' to present the supporting evidence, and the evidence was insufficient as a matter of law to support a damages award, a reviewing court may strike the award without ordering a retrial." (*Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 153; see *Kaushansky v. Stonecroft Attorneys APC* (2025) 109 Cal.App.5th 788, 803 [" 'no new trial is ordinarily allowed' " when plaintiffs had full opportunity but failed to present sufficient evidence to support their case].)  However, the circumstances here are somewhat unique.  Victor introduced significant, admissible evidence on the medical care he received in the past and will need in the future.  The parties agreed Victor incurred past medical expenses—Farmers asked the jury to award roughly half of the past medical costs requested by the Montezes.  (See *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 742 [where future economic damages award was based on expert's speculation, limited retrial on such damages was

16

appropriate because defendant did "not genuinely dispute that the plaintiffs are entitled to a reasonable, non-speculative award of future economic damages"].)  And, although Farmers asked the jury to award nothing for Victor's future medical expenses, it made that request solely based on its contention the proof of the actual costs lacked foundation, not because Farmers disputed Victor would have future expenses.

There is no hard and fast rule that requires judgment be entered in Farmers' favor in these circumstances, and we conclude the most suitable remedy is a limited retrial on economic damages.  (See generally *Weisgram v. Marley Co.* (2000) 528 U.S. 440, 444, 456 [when, "[s]horn of the erroneously admitted expert testimony, the record evidence is insufficient to justify a plaintiff's verdict," appellate courts should exercise their informed discretion in deciding whether to direct entry of judgment for defendant or to remand for further trial proceedings]); see also *Jogani*, *supra*, 118 Cal.App.5th at p. 887 [remanding for new trial on economic damages after concluding no admissible evidence supported award]; *Yaffee v. Skeen* (2024) 106 Cal.App.5th 1281, 1311 ["We have concluded the total award for future medical expenses is not supported by substantial evidence.  However, this does not mean we have concluded none of the award is supported by substantial evidence. ...  [Thus] we reverse the jury's award of damages for future medical costs and remand for a new trial on this issue."].)

The Montezes contend that if we remand for a retrial on economic damages, we should also order retrial of the noneconomic damages.  However, contrary to the Montezes' argument, the economic damages (based on the past and future medical costs) are not "inextricably intertwined" with the

17

noneconomic damages (based on Victor's pain, suffering, and other noneconomic harm).  (See *Yaffee v. Skeen*, *supra*, 106 Cal.App.5th at p. 1322 [rejecting defendant's argument "that reversal of noneconomic damages is required when other damages awards are reversed"]; *Burchell v. Faculty Physicians & Surgeons etc.* (2020) 54 Cal.App.5th 515, 529-530 [disagreeing with the proposition that the noneconomic damages award must have a " 'reasonable relationship' to the amount of economic damages" because "[i]t has long been the rule that '[t]he ratio between special and general damages is not controlling' due to differences in how those types of damages are calculated"].)  We therefore reverse and remand for a new trial limited to economic damages.[3]  Because the judgment is reversed, we also reverse the associated award of prejudgment interest and the award of costs.

---

[3]      Because we reverse and remand for a new trial on Victor's economic damages, we need not address Farmers' remaining arguments on evidentiary issues, i.e., that Zweber's testimony was inadmissible because it relied on hearsay and lacked foundation.

## DISPOSITION

The judgment is reversed. The award for economic damages and award of prejudgment interest and costs are reversed and the matter is remanded for a new trial limited to those issues. The awards for noneconomic damages, loss of consortium, and attorney fees pursuant to section 2033.420 are affirmed. Farmers is entitled to recover its costs on appeal.

STONE, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

19