Filed 7/14/14  Torres-Medina v. San Luis Bay Inn Timeshare Assoc. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| JANET TORRES-MEDINA,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>SAN LUIS BAY INN TIMESHARE ASSOC.,<br><br>  Defendant and Respondent. | 2d Civil No. B251373<br>(Super. Ct. No. CV110122A)<br>(San Luis Obispo County) |

In this personal injury case, Janet Torres-Medina appeals from the judgment entered in favor of San Luis Bay Inn Timeshare Association, Inc., respondent.  A jury returned a special verdict finding that respondent was not negligent in the maintenance of its property.  Appellant contends that the trial court (1) erroneously denied her motions in limine to exclude the testimony of respondent's expert witnesses, and (2) erroneously overruled her objection that the opinion of one of respondent's experts, Dr. Balaban, was based on hearsay.  We reject the first contention but conclude that the second contention has merit.   However, appellant has failed to carry her burden of showing that the error resulted in a miscarriage of justice.  Accordingly, we affirm.

*Factual and Procedural Background*

Appellant filed a complaint consisting of two causes of action: negligence and premises liability. Appellant alleged that in February 2010 she had slipped and fallen while walking on a wet tile deck at respondent's premises (the premises). She further alleged that respondent had negligently failed to maintain the premises and correct or warn of a dangerous condition. Appellant claimed that, as a result of the fall, she had suffered severe injuries.

In a document dated May 25, 2012, appellant demanded that the parties exchange expert witness information pursuant to Code of Civil procedure section 2034.210.[1] Appellant also demanded the production "of all discoverable reports and writings, if any, made by each expert." Pursuant to section 2034.230, subdivision (b), appellant specified that the deadline for exchanging information was 50 days before the initial trial date of August 6, 2012. The deadline, therefore, was June 17, 2012.

In a document dated June 13, 2012, respondent listed two expert witnesses: John Randall Davis, M.D., and Martin Balaban, Ph.D. Respondent's counsel declared that Dr. Davis is "a board certified orthopedic surgeon" who "will testify regarding issues surrounding [appellant's] alleged injuries . . . ." Counsel declared that Dr. Balaban "is a licensed safety engineer" who "will testify regarding issues surrounding the cause of" appellant's fall.

The court continued the trial to August 27, 2012. The court ordered that "[d]iscovery is not reopened."

In her opening brief, appellant alleges : "On October 3, 2011, [she] received Dr. Davis' [initial] medical report regarding his September 19, 2011 examination of [appellant]." She also alleges that "[a]lmost one year later, on August 24, 2012," she

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

received Dr. Davis's supplemental report.  These allegations are not supported by references to the record, but respondent does not dispute them.[2]

The trial began on July 10, 2013.  Two days later, appellant filed a motion in limine requesting that Dr. Davis's testimony be limited to the opinions expressed in his initial report.  At the hearing on the motion, appellant stated that he had not deposed Dr. Davis "due to the cost and expense of taking a doctor's deposition" and because "his medical opinion was clear in his first report."  The trial court denied the motion in limine without stating its reasons for the denial.

On July 15, 2013, five days after the trial began, appellant filed a motion to exclude Dr. Balaban's testimony  The trial court denied the motion.

At trial appellant testified that, while carrying drinks (Bloody Marys) and wearing "flip-flop" sandals, she pushed open a glass door with her "elbow or backside."  The door led to an outdoor tile deck.  She did not notice that the deck was wet from "a constant drizzle" that day.  However, she did notice that "it was damp" outside.  Appellant stepped onto the wet tile deck and slipped.  She fell backwards, landing on the right side of her "butt" and "back."  According to appellant, the tile was slippery when wet.

Dr. Davis testified that in his initial report dated September 19, 2011, he had opined that appellant sustained a " 'minimal compression fracture' " of the third lumbar vertebra.  But in his supplemental report written on or about August 24, 2012, he had opined that appellant did not sustain a fracture.  Dr. Davis changed his mind based on his review of MRI films, which made him "realize that there was no injury with [appellant's] fall in 2010."  When he wrote his initial report, Dr. Davis had a radiologist's report but did not have the MRI films.  The radiologist's report indicated that there was a compression fracture.

---

[2] According to appellant's opening brief, Dr. Davis's initial and supplemental reports were marked as exhibits.  The exhibits are not included in the clerk's transcript, and neither party requested that they be transmitted to this court pursuant to rule 8.224 of the California Rules of Court.  "Where exhibits are missing we will not presume they would undermine the judgment.  [Citation.]"  (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.)

3

Dr. Balaban testified that on June 5, 2012, he had conducted a site inspection at the premises. He tested the tiles on which appellant had allegedly slipped and concluded that they were not slippery when wet. He opined that the tiles were "safe to walk on when . . . wet." Dr. Balaban further opined that appellant did not slip: "[Appellant] was holding a Bloody Mary in each hand . . . . She was wearing flip-flops, and . . . , obviously, with a drink in each hand she can't push the door [leading to the tile deck] open, so what she did was she turned around and used her right buttock to push the door open." "As she was pushing the door open, the door was offering some resistance. . . . [T]he door was pushed open by someone else, [and] the resistance was gone. It's like leaning against a door and someone opens the door. What happens? You fall out."

The jury returned a special verdict. The first question on the special verdict form asked, "Was [respondent] negligent in the use or maintenance of the property?" The jury answered "No." The special verdict form directed the jury to not answer any further questions if it answered "No" to the first question. Thus, the jury did not answer the second question, which asked whether respondent's "negligence was a substantial factor in causing harm to [appellant]."

*Standard of Review*

"We generally review the trial court's ruling on a motion to exclude an expert's opinion for abuse of discretion. [Citation.] . . . But, 'when the exclusion of expert testimony rests on a matter of statutory interpretation, we apply de novo review.' [Citation.]" (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.)

*Motion In Limine: Dr. Davis's Testimony*

Section 2034.300 provides that, "on objection of any party who has made a complete and timely compliance with Section 2034.260, the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to . . . [¶] . . . [¶] (c) [p]roduce reports and writings of expert witnesses under Section 2034.270." Appellant contends that the trial court erroneously failed to exclude Dr. Davis's opinion as expressed in the supplemental report because that report was not produced in a timely manner. According to appellant, section 2034.270

4

"required the production of Dr. Davis['s] . . . reports and/or writings at the time of expert designation" by respondent, i.e., 50 days before the initial trial date of August 6, 2012. Appellant did not receive the supplemental report until August 24, 2012.  Section 2034.270 provides: "If a demand for an exchange of information concerning expert trial witnesses includes a demand for production of reports and writings . . . , all parties shall produce and exchange, at the place and on the date specified in the demand, all discoverable reports and writings, if any, made by any designated expert . . . ."

"We cannot, as [appellant] implicitly invites us to do, declare a rule that expert reports and writings must be created by the specified exchange date or not at all. . . . [T]he Legislature appears to have anticipated that experts would continue their preparations after the specified date."  (*Boston v. Penny Lane Centers, Inc.*, *supra*, 170 Cal.App.4th at p. 952.)  On the other hand, "section 2034.300 empowers the court to exclude the expert opinion of any witness offered by a party who has *unreasonably* failed to produce expert reports and writings as required by section 2034.270.  (§ 2034.300, subd. (c).)  If the trial court concludes that a party intentionally manipulated the discovery process to ensure that expert reports and writings were not created until after the specified date, it may find the failure to produce the reports and writings was unreasonable and exclude the expert's opinions."  (***Ibid***.)

At the hearing on the motion in limine, appellant did not present any evidence that respondent had "engaged in a pattern of behavior designed to impede expert discovery" or had acted unreasonably.  (*Boston v. Penny Lane Centers, Inc.*, *supra*, 170 Cal.App.4th at p. 953.)  In her opening brief appellant alleges that "the record is rife with the efforts of Respondent to sandbag and utilize sharp practices against [her]."  But this allegation is unsupported by argument or citations to the record.  Although Dr. Davis's supplemental report was given to appellant only three days before the first continued trial date of August 27, 2012, the trial did not begin until July 10, 2013, more than 10 months later.  Appellant had ample time to take Dr. Davis's deposition and to marshal her evidence to rebut the opinion expressed in his supplemental report.  Accordingly, the trial court did not abuse its discretion in denying the motion in limine.

5

Even if the trial court had abused its discretion, a reversal would be unwarranted because appellant failed to carry her burden of showing that the admission of Dr. Davis's testimony resulted in a miscarriage of justice.  (Evid. Code, § 353, subd. (b).)[3] "A miscarriage of justice should be declared only when the reviewing court is convinced after an examination of the entire case, including the evidence, that it is reasonably probable a result more favorable to the appellant would have been reached absent the error.  [Citations.]  Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant.  [Citations.]"  (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853-854.)  A miscarriage of justice could not have occurred here because Dr. Davis's testimony concerned the issue of whether appellant's fall had caused her to suffer bodily injury.  The jury never reached this issue because it found that respondent had not been negligent in maintaining the property.

*Motion In Limine: Dr. Balaban's Testimony*

Appellant's motion in limine sought to exclude Dr. Balaban's testimony because respondent had not "produced any documentation, reports, or writings from Mr. Balaban surrounding the basis for his testimony."  At the hearing on the motion, respondent's counsel stated that Dr. Balaban had not prepared a report and that appellant had not deposed him. Appellant's counsel protested that he had not received a declaration from Dr. Balaban, and "any expert that is going to be produced by counsel to testify in a courtroom of law is to provide a declaration as to what they are going to testify to."  After the noon recess, the trial court declared: "I researched this [during the recess] . . . . The declaration which was filed [by respondent] conforms to the requirements of the code. No report having been issued, there is no report to exclude.  The motion in limine is denied."

---

[3] Evidence Code section 353, subdivision (b) provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . . [¶] (b) [t]he court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

The trial court did not abuse its discretion in denying the motion. Appellant's counsel erroneously argued that Dr. Balaban was required to provide a declaration as to his proposed testimony. Section 2034.260, subdivision (c) provides that the exchange of expert witness information shall "include or be accompanied by an expert witness declaration *signed only by the attorney* for the party designating the expert . . . ." (Italics added.) "[T]he term 'expert witness declaration' is something of a misnomer since it is prepared and signed not by the expert, but by . . . the party's attorney. [Citation.]" (*Bonds v. Roy* (1999) 20 Cal.4th 140, 144, fn. 2.)

Appellant argues that the trial court abused its discretion in not granting the motion in limine because respondent had failed to produce Dr. Balaban's field notes. But when the trial court ruled on the motion, it had not been informed of the existence of these notes. The notes were first disclosed during appellant's cross-examination of Dr. Balaban. Dr. Balaban testified that, although he had not prepared a report, he had "field notes" that are "like a report." The record on appeal does not include the notes.

The field notes issue involves a new theory asserted for the first time on appeal. "As a general rule, failure to raise a point in the trial court constitutes [a] waiver and appellant is estopped to raise that objection on appeal. An exception to the general rule may be presented, however, where the theory presented for the first time on appeal involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence. [Citation.]" (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.)

It is undisputed that respondent did not produce Dr. Balaban's field notes. However, because this issue was not raised below, respondent made no showing why it had not produced the notes. When Dr. Balaban disclosed the existence of the notes during cross-examination, appellant could have made a motion to strike his entire testimony pursuant to section 2034.300, but she did not do so. A motion to strike would have afforded respondent an opportunity to explain the nondisclosure of the notes. Section 2034.300 provides that the trial court shall exclude "the expert opinion of any witness that is offered by any party who has *unreasonably* failed" to produce writings of

7

an expert witness. (Italics added.) If respondent had explained the nondisclosure, the trial court may have found that it had not acted unreasonably. Dr. Balaban may not have informed respondent of the existence of the field notes. On the other hand, the notes may have been undecipherable or of little or no value to appellant. In her opening brief, appellant states that "Dr. Balaban failed to record any of the procedures he utilized in his testing." Moreover, "the opportunity for meaningful deposition is one of the circumstances the trial court should consider when making the reasonableness determination." (*Boston v. Penny Lane Centers, Inc.*, *supra*, 170 Cal.App.4th at p. 954.) Appellant had an opportunity to meaningfully depose Dr. Balaban before trial. Because appellant did not move to strike Dr. Balaban's testimony, she may not raise the field notes issue for the first time on appeal. "Since this new theory involves an issue of fact, . . . and the facts . . . were not developed below, we find the argument was waived for failure to raise it in the trial court." (*City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1327.)

In any event, as a matter of law appellant was precluded from moving to exclude Dr. Balaban's testimony because she had failed to comply with discovery requirements. Section 2034.300 provides that, "on objection of any party who has made a *complete and timely compliance with Section 2034.260*," the court shall exclude the opinion of an expert witness if the party presenting that witness has unreasonably failed to produce the witness's reports and writings. (Italics added.) Section 2034.260 provides that the exchange of expert witness information shall include an expert witness declaration containing five items, including (1) "[a] brief narrative statement of the general substance of the testimony that the expert is expected to give" and (2) "[a] representation that the expert has agreed to testify at the trial." (*Id*., subds. (c)(2), (3).) Appellant's expert witness declaration omits both of these requirements as to her "Engineering Consultant Expert," J. George Sotter.

The omitted requirements serve useful purposes. "A requirement that the expert has 'agreed to testify' is understandable in the retained-expert context so that an opposing party knows the expert is sufficiently committed that it should expend the resources to

8

depose the expert." (*Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 38.)  The purpose of requiring a brief statement of "the general substance" of the expert's expected testimony (§ 2034.260, subd. (c)(2)) "is to give fair notice of what an expert will say at trial.  This allows the parties to assess whether to take the expert's deposition, to fully explore the relevant subject area at any such deposition, and to select an expert who can respond with a competing opinion on that subject area." (*Bonds v. Roy*, *supra*, 20 Cal.4th at pp. 146-147; accord, *Schreiber v. Estate of Kiser*, *supra*, 22 Cal.4th at pp. 37-38.)  "In short, the statutory scheme as a whole envisions timely disclosure of the general substance of an expert's expected testimony so that the parties may properly prepare for trial." (*Bonds v. Roy*, *supra*, 20 Cal.4th at p. 148.)  "[A] trial court may preclude an expert witness from testifying at trial on a subject whose general substance was not previously described in an expert witness declaration." (***Id***., at p. 142.)

Appellant's expert witness declaration did not give respondent fair notice of what Mr. Sotter would say at trial.  Appellant's counsel declared that Sotter "is expected to testify as to liability, causation and damages."  "Causation" could mean the cause of appellant's fall, the cause of her alleged injury, or both.  Most important, "liability" is a broad, amorphous term encompassing every issue at the trial except the amount of damages.  Black's Law Dictionary defines "liability" as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." (Black's Law Dictionary (9th ed. 2009) p. 997.)  Since appellant's expert witness declaration stated that Sotter's expected testimony would also cover the issue of damages, the declaration in effect gave notice that Sotter would testify about everything and anything concerning the case.  This cannot constitute fair notice of "the general substance" of Sotter's testimony.  "[I]t is difficult to distinguish cases in which a party inaccurately describes the general substance of an expert's expected testimony from cases in which a party wholly fails to disclose an expert. [Citations.]" (*Bonds v. Roy*, *supra*, 20 Cal.4th at p. 147.)

We have found only one case in which the court concluded that an expert witness declaration met the "general substance" requirement: *Sprague v. Equifax, Inc.* (1985) 166

9

Cal.App.3d 1012.  There, the declaration stated that a doctor "would testify 'to the medical care and treatment rendered to plaintiff as well as [his] diagnoses and prognoses of plaintiff's physical condition.' " (***Id***., at p. 1040, brackets in original.)  Appellant's expert witness declaration comes nowhere near the specificity of the declaration in *Sprague*.  It also lacks the specificity of respondent's expert witness declaration as to the expected testimony of its engineering expert, Dr. Balaban: "Dr. Balaban will testify regarding issues surrounding the cause of [appellant's] alleged incident which is the subject of this litigation, including but not limited to the condition of the subject premises, human factors involved in the alleged incident, generally accepted safety principles and duties and responsibilities of a premises owner."

Because appellant's expert witness declaration did not give respondent fair notice of the "general substance" of Sotter's expected trial testimony and did not contain "[a] representation that [Sotter] ha[d] agreed to testify at the trial" (§ 2034.260, subds. (c)(2), (3)), appellant did not make "a complete and timely compliance with Section 2034.60." (§ 2034.300.)  In view of her own discovery failures, appellant was not entitled to move to exclude Dr. Balaban's testimony for respondent's alleged discovery failures.[4]  (***Ibid***.)

*Objection to Dr. Balaban's Opinion on*

*Ground that It Was Based on Hearsay*

Dr. Balaban opined that appellant had fallen not because she slipped, but because someone suddenly opened a door that she had been trying to push open with her buttocks.  Dr. Balaban explained: "It's like leaning against a door and someone opens the door.  What happens?  You fall out."  Dr. Balaban's opinion was based on the deposition of Laura Gutierrez, who witnessed appellant's fall but did not testify at trial.  Appellant

---

[4] We reject appellant's argument in her reply brief that respondent is precluded from raising this issue on appeal because it failed to raise the issue in the trial court.  The issue "involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence.  [Citation.]" (*Redevelopment Agency v. City of Berkeley*, *supra*, 80 Cal.App.3d at p. 167.)

objected and moved to strike Dr. Balaban's "statement as based upon pure hearsay." The court overruled the objection and impliedly denied the motion to strike.

"Expert testimony may . . . be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions. [Citations.] Of course, any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] . . . [¶] So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. (*In re Fields* (1990) 51 Cal.3d 1063, 1070 . . . [expert witness can base 'opinion on reliable hearsay, including out-of-court declarations of other persons' ] . . . .)" (*People v. Gardeley* (1996) 14 Cal.4th 605, 618.)

Laura Gutierrez's alleged deposition testimony did not qualify as "reliable hearsay." It conflicted with appellant's trial testimony that she "pushed the door open with [her] elbow or backside," "stepped out [onto the tile deck] and . . . immediately slipped." In view of the evidentiary conflict, the reliability issue was actually a witness credibility issue that should have been decided by the jury. The jury was unable to decide this issue because Gutierrez did not testify and her deposition testimony was not admitted into evidence.

Because Dr. Balaban's opinion was based on unreliable hearsay evidence, the trial court erred by not excluding the expert's opinion. " '[T]he value of an expert's opinion depends on the truth of the facts assumed.' [Citation.] 'Where the basis of the opinion is unreliable hearsay, the courts will reject it.' [Citations.]" (*People v. McWhorter* (2009) 47 Cal.4th 318, 362; see also *People v. Gardeley*, *supra*, 14 Cal.4th at p. 618 [" 'Like a house built on sand, the expert's opinion is no better than the facts on which it is based' "].) Furthermore, "while an expert may give reasons on direct examination for his opinions, including the matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence," i.e., Laura Gutierrez's alleged deposition testimony that someone other than appellant opened the

door leading to the tile deck. (*People v. Coleman* (1985) 38 Cal.3d 69, 92, disapproved on another point in *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32.)

*Miscarriage of Justice*

A reversal is required only if appellant shows that the trial court's error resulted in a miscarriage of justice. (Evid. Code, § 353, subd. (b).) Appellant must demonstrate that "it is reasonably probable that [she] would have obtained a more favorable result" if the trial court had excluded Dr. Balaban's testimony that she fell when someone suddenly opened a door that she had been trying to push open with her buttocks. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1415.) "Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice. [Citations.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Appellant has failed to spell out in her opening brief exactly how the admission of the testimony in question caused a miscarriage of justice. Without supporting argument or citations to the record, appellant alleges: "The testimony was . . . clearly prejudicial to Appellant. Absent Dr. Balaban's inadmissible testimony, there was no evidence to suggest that anything other than the wet tile caused Appellant to slip and fall. [¶] . . . [I]f Dr. Balban's testimony had been properly excluded, there was certainly a *reasonable chance* the jury would have found that Respondent was negligent . . . ." (Italics added.)

Appellant's allegations are insufficient to show a miscarriage of justice. They are conclusory and are also unwarranted. Without objection, Dr. Balaban testified that (1) the tiles were not slippery when wet, and (2) the tiles were "safe to walk on when . . . wet." Appellant did not present any expert testimony to refute Dr. Balaban's testimony. She never called her designated engineering expert, Mr. Sotter. Joseph Forgette, the former assistant manager of the premises, testified that during his deposition he had stated under penalty of perjury that the tiles were not slippery when wet. In addition, Ben Joel Banks, the present resort manager of the premises, testified that a licensed contractor had installed porcelain tile with a "rough surface" that is "rated for outdoor use."

Moreover, Dr. Balaban's inadmissible testimony concerned the issue of whether the allegedly slippery-when-wet tile was a substantial factor in causing appellant's fall. The jury never reached the substantial factor issue because it found that respondent was not negligent in maintaining the property. Thus, it is not reasonably probable that appellant would have obtained a more favorable result if the testimony in question had been excluded.

*Disposition*

The judgment is affirmed. Respondent shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

13

Martin J. Tangeman, Judge

Superior Court County of San Luis Obispo

_____

J. Scott Ferris, Ron F. Gurvitz; Gurvitz, Marlowe & Ferris, for Appellant.

Acker & Whipple; Jerri L. Johnson and Laurie N. Stayton, for Respondent.